UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES COZZENS and I-75 OUTER
DRIVE ADULT BOOK STORE,

    Plaintiffs,

v.

Case No. 08-11778

Hon. John Corbett O'Meara

CITY OF LINCOLN PARK,
a municipal corporation,

    Defendant,

and

PAPALAS DRIVE DEVELOPMENT, LLC,
and HDV – LINCOLN PARK LLC,

    Intervenors.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
<u>DENYING PLAINTIFFS' MOTIONS</u>**

Before the court are three motions: (1) Plaintiffs' motion regarding Rule 26(f) discovery plans, filed October 29, 2008; (2) Defendant's motion for summary judgment, filed November 7, 2008; and (3) Plaintiff's motion to disqualify attorney Bradley Shafer, filed January 5, 2009. The court heard oral argument on March 5, 2009. For the reasons discussed below, Defendant's motion for summary judgment is granted and Plaintiffs' motions are denied.

**<u>BACKGROUND FACTS</u>**

Plaintiffs seek to operate an adult book store in the City of Lincoln Park. Plaintiffs applied for an "adult use" license from the city for the store in November 2007. The city denied

Plaintiffs a certificate of occupancy for the book store based upon Lincoln Park Ordinance 1294.33(b), which places some restrictions on the location of "adult business" within the city. Specifically, the ordinance prohibits the location of an adult business within a one-thousand foot radius of another adult business. Plaintiffs contend that at the time of the denial of certificate of occupancy, there was no existing adult business within one-thousand feet of the proposed book store. Seeking declaratory and injunctive relief, Plaintiffs claim that the ordinance at issue is unconstitutional on its face and as applied.

The City and the Defendant-Intervenors, Papalas Drive Development and HDV-Lincoln Park, allege that there was an existing adult business within one-thousand feet of the proposed book store – the Hustler Club, which is located across the street. Defendant and Intervenors claim that the Hustler Club was given City approval before Plaintiffs sought approval for their bookstore.

## LAW AND ANALYSIS

### I.    Defendant's Motion for Summary Judgment

Defendant seeks summary judgment because Defendant alleges that Plaintiffs lack standing, they have unclean hands, they have not prosecuted this case in the names of the real parties in interest, and they have deceived the City and the court about their intention to open an adult book store – Defendant claims Plaintiffs actually intend to open an adult cabaret nightclub. Although these are serious allegations, they are borne out by the record, as discussed below.

On November 20, 2007, Plaintiff James Cozzens submitted a certificate of occupancy application for his proposed adult bookstore. In the application Cozzens represented that he had ten parking spaces assigned to his business. Along with the application, Cozzens submitted a

copy of a lease agreement for the bookstore premises, located in what is known as the Vanguard Building. The lease was dated November 1, 2007, and expired October 31, 2008. The landlord identified on the lease was Stanley Sikorski.

On February 22, 2008, the City denied Cozzens's request for a certificate of occupancy because an existing adult business (the Intervenors' Hustler Club) was located within one thousand feet of the proposed bookstore. Cozzens applied for a zoning variance, which was denied by the Zoning Board of Appeals. Cozzens filed this action on April 28, 2008.

Defendant took the deposition of Sikorski on October 28, 2008. Sikorski testified that in April or May of 2007, Marion Bednarski approached him about renting a portion of the Vanguard Building, or buying the building, for the purpose of opening an adult nightclub. In October 2007, Bednarski introduced Cozzens to Sikorski. Cozzens wanted to lease a portion of the Vanguard Building to establish an adult bookstore. Bednarski and Cozzens told Sikorski that the bookstore proposal was a "first step to something bigger." Ex. D. at 44. It was Sikorski's impression that Bednarski was "calling the shots."[1]

Sikorski and Cozzens did enter into a lease for a portion of the Vanguard Building, but it was not the lease Cozzens submitted to the City. Compare Ex. A-3 (lease submitted to the City, referred to as "Lease 1") with Ex. G (lease Sikorski produced at his deposition, referred to as "Lease 2"). Lease 2 includes a diagram that shows that the proposed bookstore had three parking spaces assigned to it, as opposed to the ten spaces Cozzens represented to the City.

---

[1] Bednarski filed a motion in this action to intervene as a defendant. It is unclear to the court now why Bednarski would attempt such a maneuver. The motion was withdrawn before the hearing, so the court did not rule upon it. Defendant has moved for sanctions against Bednarski and his attorney, Cindy Rhodes Victor. That motion is pending before Magistrate Judge Hluchaniuk.

Lease 2 also expired on October 31, 2008.  Cozzens paid the first and last months' rent as well as rent for January 2008, then stopped making payments.  Sikorski testified that Cozzens and his partner, Anthony Seagraves, are "waiting for the status of the opportunity to open an adult club."  Ex. D. at 27.

Indeed, Cozzens and Seagraves negotiated a third lease with Sikorski ("Lease 3"), which was not executed.  Sikorski testified that Lease 3 was negotiated in February 2008 and was to be signed if they (Cozzens, Seagraves, and possibly Bednarski) got approval to open an adult nightclub.  Ex. D. at 21-24, 53-59.  Lease 3 indicates that the premises were to be used as an "adult entertainment lounge," which Defendant contends involves topless dancing.  Ex. J.

Until Sikorski's deposition, the City was unaware of Seagraves's involvement with the proposed project.  The City was also unaware that Cozzens and Seagraves (and possibly Bednarski, although his involvement is unclear) intended to put an adult nightclub in the Vanguard Building, not an adult bookstore.  Further, Cozzens apparently now admits that he submitted an invalid lease to the City (Lease 1).  In their response brief, Plaintiffs point to Lease 2 as the "effective lease for the premises."  Resp. at 5.  Cozzens also apparently misrepresented the amount of parking available to the business on his certificate of occupancy application.

### A.     Unclean Hands

The City argues that, because of these deceptions, Plaintiffs' suit must be dismissed based upon the doctrine of unclean hands.  Plaintiffs are seeking equitable relief in this case, in that they want the court to declare the Lincoln Park ordinance unconstitutional.  "The unclean hands doctrine derives from the equitable maxim that 'he who comes into equity must come with clean hands.'  This maxim 'closes the doors of a court of equity to one tainted with

inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior' of the opposing party." Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co., 839 F.2d 1147, 1155 (6th Cir. 1988) (citing Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806, 814 (1945)).

> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.' Keystone Driller Co. v. General Excavator Co., supra, 290 U.S. 245, 246, 54 S.Ct. 147, 148, 78 L.Ed. 293. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.

Precision Instrument, 324 U.S. at 814.

In response to Defendant's detailed and supported argument, Plaintiffs argue that summary judgment is premature. Plaintiffs contend that they need more discovery, including the depositions of the Plaintiffs. Plaintiffs do not attach any exhibits to their response brief, not even an affidavit from Plaintiff Cozzens. Plaintiffs do not specify what more discovery would disclose, other than to say that "the record will be clear that there was no deception, that Plaintiffs fully disclosed the information requested by the City and that no fact will prevent Plaintiffs from obtaining the relief it seeks. . . ." Resp. at 11.

Notably, Plaintiffs have not complied with the requirements of Rule 56(f), which allows a party opposing a summary judgment motion to seek more discovery if it presents an affidavit detailing the information it seeks. "The importance of complying with Rule 56(f) cannot be overemphasized. 'If the appellant has not filed either a Rule 56(f) affidavit or a motion that

gives the district court the chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery.'" Cacevic v. City of Hazel Park, 226 F.3d 483, 488-89 (6th Cir. 2000) (citation omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Id.

Defendant contends that, as of the time it filed its reply brief, Plaintiffs have not done any discovery. They have not submitted interrogatories, requested documents, or scheduled depositions. Plaintiffs have not explained why they need more time for discovery or why they apparently have not even begun, particularly in light of the fact that Plaintiffs filed this action on April 28, 2008, nearly one year ago.

As the record stands, it is clear to the court that Plaintiffs come before it with unclean hands – they have not been forthright with the City in seeking a certificate of occupancy for their business. Plaintiffs have offered no justification for providing an invalid lease to the City, for failing to disclose the involvement of Seagraves, for misrepresenting the amount of parking available, or for failing to disclose their true purpose – to open an adult nightclub. Plaintiffs' unclean hands foreclose the possibility of equitable relief from this court. Because Plaintiffs have failed to demonstrate that a general issue of material fact exists that would preclude summary judgment, the court will grant Defendant's motion.[2]

---

[2] Plaintiffs state that if the court dismisses their equitable claims, they will seek leave to add a claim for damages. Plaintiffs have not filed a motion to amend their complaint, so the court does not know the basis for any such claim. As Defendant points out, however, such a motion would likely be futile. Plaintiffs cannot recover damages unless the court finds that the ordinance is unconstitutional. The court will not reach the constitutional issue based upon

**B.     Standing/Mootness**

An alternative basis for dismissing Plaintiffs' complaint is that they no longer have standing to prosecute this action.  Defendant contends that Plaintiffs no longer have a property interest that is affected by the challenged ordinance.  The alleged lease that Plaintiffs claimed was their property interest is now expired (both Lease 1 and Lease 2 expired as of October 31, 2008), which renders this case moot, according to Defendant.  See Morrison v. Board of Education of Boyd Cty., 521 F.3d 602, 608 (6th Cir. 2008) ("By now, it is axiomatic that a litigant demonstrates Article III standing by tracing a concrete and particularized injury to the defendant – whether actual or imminent – and establishing that a favorable judgment would provide redress."); Midwest Media Property LLC v. Symmes Twp., 503 F.3d 456, 460 (6th Cir. 2007) ("Mootness occurs 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").  If the lease has expired, a favorable judgment would not provide redress to Plaintiffs, because they would not be able to open their bookstore in any event.

In response, Plaintiffs contend that "the lease has been renewed and the bookstore continues to occupy the premises." Resp. at 6.  Plaintiffs provide no citation to the record in support of this statement.  Plaintiffs have not provided a copy of the allegedly renewed lease or any testimony indicating that the lease has been renewed.  Plaintiffs do not contest Defendant's legal analysis that, if the lease is expired, this case is moot.  Plaintiffs have failed to meet their burden of demonstrating that there is a genuine issue of material fact that would preclude summary judgment.  The court will also grant summary judgment in favor of Defendant on the

---

Plaintiffs' unclean hands and, as discussed below, mootness.

basis of mootness.

## II.     Plaintiffs' Motion to Disqualify Bradley Shafer

Plaintiffs seek to have the City of Lincoln Park's counsel disqualified because he previously represented Intervenors in this litigation.  Defendant and Intervenors contend that there is no conflict because both Defendant and Intervenors have the same interest in seeing the Lincoln Park ordinance upheld.  Defendant apparently liked Bradley Shafer's work on behalf of Intervenors and proposed that he assist in the defense of the ordinance.  The City had two of its lawyers consider the issue and conclude that there is no conflict.  The City also waived any potential conflict.  Intervenors as well as Shafer also considered the conflict issue and concluded there was none.  Intervenors also waived any potential conflict.

Under the Michigan Rules of Professional Conduct, "[r]esolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation." M.R.P.C. 1.7 cmt.  The general rule regarding conflicts is as follows:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> > (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> > (2) the client consents after consultation.  When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

M.R.P.C. 1.7.

An attorney who violates this rule may be disqualified as counsel; however, disqualification is an "extreme sanction" that the court should employ only when there is a "reasonable possibility that some specifically identifiable impropriety" actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain the counsel of his choice. DeBiasi v. Charter County of Wayne, 284 F. Supp.2d 760, 770 (E.D. Mich. 2003) (Rosen, J.) (citations omitted). Opposing counsel may properly raise the question when a conflict is such that it calls "into question the fair or efficient administration of justice." M.R.P.C. 1.7 cmt. "Such an objection should be viewed with caution however, for it can be misused as a technique of harassment." Id. See also Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988) ("Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice.").

Given the fact that both Defendant and Intervenors have waived off on any potential conflict, and because Defendant and Intervenors's interests are aligned in this litigation, Plaintiffs have not demonstrated that a conflict exists or that the extreme sanction of disqualifying Bradley Shafer is warranted. The court will deny Plaintiffs' motion.

### III.    Pending Discovery Motions

Plaintiffs also filed a motion regarding the parties' disagreement on how they would proceed with discovery. In light of the court's ruling on Defendant's motion for summary

judgment, this motion will be denied as moot.

The court is aware that there are two discovery motions and a joint motion for sanctions against Plaintiffs pending before Magistrate Judge Hluchaniuk.  Although this opinion and order likely renders the discovery motions moot, the court does not intend to preclude Magistrate Hluchaniuk from ruling upon the motion for sanctions.

## ORDER

IT IS HEREBY ORDERED that Defendant's November 7, 2008 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's January 5, 2009 motion to disqualify Bradley Shafer is DENIED.

IT IS FURTHER ORDERED that Plaintiff's October 29, 2008 motion regarding discovery is DENIED AS MOOT.

                                                        s/John Corbett O'Meara
                                                        UNITED STATES DISTRICT JUDGE

Date:  March 13, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 13, 2009, by electronic and/or ordinary mail.

                                                        s/William Barkholz
                                                        Case Manager